UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06CV-218-R

REGINA MASON

PLAINTIFF

v.

PRAXAIR, INC.,

DEFENDANT

### MEMORANDUM OPINION

Defendant Praxair, Inc. ("Praxair"), has filed a Motion to Dismiss or to Compel Arbitration (Dkt. # 5). Plaintiff Regina Mason responded (Dkt. # 10) and Praxair replied (Dkt. # 12), and this matter is now ripe for decision. For the reasons given below, Praxair's motion is **GRANTED in part and DENIED in part**.

### BACKGROUND

Plaintiff Regina Mason was employed from March of 2004 until June of 2005 by defendant Praxair as an Area Sales Manager, covering Southeastern Kentucky and West Virginia. Plaintiff's Complaint contains a number of allegations, a detailed recitation of which are necessary for an examination of the relationship between Plaintiff's claims in this case and the arbitration agreement in question.

Plaintiff alleges that Praxair "promised [her] that her compensation would include a bonus package that would be offered to her in June[,] 2004" and that Praxair agreed to pay her a salary of $120,000.00 annually. (Complaint, Dkt. # 1, at ¶ 8, 10). She alleges that, based on this promise, she accepted the job with Praxair and turned down other job offers. (*Id.* at ¶ 11.) The Complaint does not state what Plaintiff alleges she was actually paid; however, the Court

1

deduces from ¶ 16 thereof that Plaintiff was paid approximately $80,000.00 annually. Plaintiff alleges that she complained in November of 2004 that she was not being paid what she was promised, and that a bonus was offered but never actually paid. (*Id.* at ¶ 12-14.) According to the Complaint, no further attempt was made by Praxair to adjust her salary until March of 2005, "by which time Plaintiff was off on medical leave, but was informed by Defendant that her salary would be frozen for two years and that she could not expect any increase until 2007." (*Id.* at ¶ 19.) Plaintiff further alleges that "[w]hile she was on medical leave, Plaintiff was informed that her position with Defendant was eliminated on June 1, 2005. On June 30[,] 2005, Plaintiff was 'separated from payroll.'" (*Id.* at ¶ 34.)

Plaintiff also alleges that "[a]s the direct and proximate result of the actions of the Defendant, set forth herein, Plaintiff was required to take a medical leave from her employment beginning March 4, 2005." (*Id.* at ¶ 33.) The intervening portion of the complaint describes several incidents which occurred during the course of her employment, all of which she apparently alleges led to her need to take medical leave. As described above, she alleges that she had a number of discussions with several of her supervisors with respect to her compensation and bonus packages. (*Id.* at ¶ 12-19.) Plaintiff also alleges that, at a meeting in November of 2004, she "advised those in attendance, including her supervisors, that she had observed striking similarities between [one of Praxair's sales programs] and a similar program at Apria Healthcare" where she had previously worked. (*Id.* at ¶ 21.) Specifically, she alleges that she raised concerns about whether two Praxair employees had copied several documents from Apria's program, which she characterizes as "misappropriat[ing] intellectual property" belonging to Apria. (*Id.* at ¶¶ 21-24.) Thereafter, Plaintiff alleges that she was required by her supervisor

(one of the employees she accused of copying documents from Apria) to "undergo the New Manager Assimilation Program." (*Id.* at ¶ 25.) She alleges that this was in retaliation for her raising the issues of the allegedly copied documents and her compensation package. (*Id.* at ¶ 24, 30.) She alleges that she "was the only individual chosen for the New Manager Assimilation Program" and that it was very "negative ... in tone" and that a Territory Manager (one of the employees whom Plaintiff supervised) who attended "characterized it as a 'Regina-bashing session...'" (*Id.* at ¶¶ 25-30.) Plaintiff alleges that as a result of the program: "Plaintiff's progress, authorities [*sic*] were undermined with her Territory Managers" and "Plaintiff suffered professionally, and was rendered unable to meet budget expectations which were imposed upon her by Defendant, providing Defendant with a pretext to terminate Plaintiff's employment." (*Id.* at ¶ 31.) Plaintiff further alleges that she "has also suffered personally, due to the embarrassment and humiliation of having been required to submit to the New Managers Assimilation Program." (*Id.* at ¶ 32.)

      Plaintiff's Complaint seeks (i) to enforce Praxair's alleged promise that it would pay her a salary of $120,000.00; (ii) damages for breach of contract for Praxair's failure to do so; (iii) damages for gender discrimination; (iv) damages for creation of a hostile work environment; (v) damages as compensation for intentional infliction of emotional distress; (vi) damages for retaliation; and (vii) damages for violation of 29 U.S.C. § 2601, *et seq.*, the Family and Medical Leave Act.  Praxair's motion asks the Court to either dismiss or stay the matter, and to order arbitration of Plaintiff's claims pursuant to an arbitration clause contained in the application for employment filed by Plaintiff Mason when seeking employment with Praxair.  Plaintiff's objections to the submission of her claims in this case to arbitration are: (i) that the language in

the arbitration clause does not cover the claims in her complaint; and (ii) that enforcement of the clause would be unconscionable because she allegedly was told by Steve Dawson, Praxair's Area Business Manager and the person who had given her the application, that the clause would not apply to her because she was not applying for a job in which she would have become a union member.

## DISCUSSION

The parties correctly begin with the proposition that a strong federal policy favors enforcement of arbitration agreements. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). In fact, "[t]he Arbitration Act establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986). Accordingly, a court interpreting an arbitration clause must, viewing the situation through the lens of the federal policy favoring arbitration, use ordinary contract principles to decide whether parties have agreed to arbitrate a particular matter. *See EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 454 n.4 (6th Cir. 1999) (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 475 (1989)).

Applying these principles, Plaintiff's first objection - that the arbitration clause does not cover the claims in Plaintiff's complaint - is unavailing. The provision in question reads as follows:

> I agree to pursue any dispute in connection with any future separation from employment by the Company promptly through binding arbitration pursuant to the rules of the American Arbitration Association before an arbitrator selected by the Company and me by striking from no more than three panels of arbitrators obtained from the Federal Mediation and Conciliation Service, or through such equivalent alternative dispute resolution procedure as the Company may designate, except as provided by express contract; I agree that to the extent permitted by law, this will be my sole and exclusive remedy for such dispute.

(Exhibit 1 to Dkt. # 5, at 4). Plaintiff argues that "the clause is to be directed only to 'future separation' from employment and does not refer at all to the myriad claims an employee might have against Praxair during the employment relationship..." (Response, Dkt. # 10, at 9). She also argues that the clause "makes no mention of any statutory or common law claims which an employee has within the employment relationship, and which the employee is being asked to waive." (*Id.* at 9-10). That the clause does not specify the causes of action it covers does not render it unenforceable under Sixth Circuit law. *Haskins v. Prudential Ins. Co. of America*, 230 F.3d 231, 240 (6th Cir. 2000).

The "any dispute in connection with any future separation" language is, on its face, quite broad. The issue in construing it is whether it is broad enough to encompass all of Plaintiff's claims, as set forth in her Complaint.

The first two claims contained in her complaint, Counts I and II, do not appear to be related to Plaintiff's termination. They are entitled "promissory estoppel" and "breach of contract," respectively, and relate specifically to Plaintiff's claim that, prior to her accepting the job at Praxair, Praxair promised to compensate her at a rate of $120,000.00 per year, but it failed to do so. The adjudication of these claims would rest on the application of contract law to a finding of facts related to Plaintiff's negotiations with Praxair prior to her employment, as well as facts about how much Plaintiff was actually paid. Plaintiff's Complaint connects the issue of

5

her compensation to her other claims in the sense that she asserts that her raising concerns about it caused Praxair to retaliate, but the claims themselves are not logically related to the issues that caused her separation from the company.  That is, the claims would be resolved without reference to Praxair's motivations in sending her to the New Management Assimilation Program and ultimately terminating her; indeed, if she were still employed with Praxair she could still, theoretically, bring these claims.  Therefore, these claims are not reasonably interpreted to be "in connection with" her separation from the company.

The Court makes this distinction bearing in mind Defendant's correct assertion that the term "in connection with" is a broad one and has been given broad application.  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).  However, the Court does not believe that the arbitration clause at issue in this case is as broad as the one at issue in another case cited by Praxair, *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, wherein the Sixth Circuit held that when interpreting a broad arbitration clause, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators."  350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).  The clause at issue in that case required "arbitration of matters 'arising out of [the] Agreement.'"  *Id.* at 576.  Even if the Court were to interpret "in connection with" as broadly as the *Highlands* court interpreted the term "arising out of," the clause in the instant case contains a significant limitation - it applies to claims relating to Plaintiff's *separation* from the company.  To read the clause as broadly as Praxair suggests would be to essentially read the term "separation" to mean Plaintiff's entire employment; this

would be contrary to the plain language of the provision.

On the other side of the spectrum is Plaintiff's FMLA claim. Plaintiff's FMLA claim falls clearly within the realm of the arbitration provision, in that Plaintiff asserts that "Defendant's actions in terminating Plaintiff's employment while she was on medical leave constitute a violation of the [FMLA]." (Complaint, Dkt. # 1, at ¶ 57.)   The other provisions are less easy to interpret due to the generality of the language in Plaintiff's Complaint, which incorporates each of the factual allegations by reference into each Count.  However, based on the information contained in the Complaint, the Court finds that Counts III, IV, V, and VI (discrimination, hostile work environment, intentional infliction of emotional distress, and retaliation) are all also claims "in connection with" Plaintiff's termination, and therefore are covered by the arbitration agreement.

Plaintiff also argues that the enforcement of the arbitration clause would be unconscionable.  Her grounds for this are described in her affidavit as follows:

> I read the [arbitration clause] before I signed my application.  I was uncertain as to what it meant.  I, therefore, inquired of Steve Dawson, who held the position of Area Business Manager with Defendant, Praxair, Inc., and who had presented this application to me on behalf of [Praxair].  Mr Dawson told me that the referenced statement did not apply to me, that it applied only to Praxair's union members of which I was not one nor was I contemplating becoming one.  He told me that I need not concern myself with this language in the application.  I was satisfied with his explanation.  I did not understand that the referenced language would impose any limitations on claims which I might wish to pursue against [Praxair] that arose either during the course of my employment with [Praxair] or upon my termination from employment there.

(Affidavit, Attachment # 1 to Dkt. # 10, at ¶¶ 5-6).  However, the application, which Plaintiff read and signed, contained the following provision on the same page as the arbitration provision:

> I agree that neither statements by Company officials nor Company policies, practices and procedures are contracts, or employment or otherwise, and that

7

> other than this application, only an express contract, meaning a written contract signed by both the company and me or any collective bargaining representative is legally binding on the Company.

(Exhibit 1 to Dkt. # 5, at 4). Under Kentucky law, "a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing..." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 640 (Ky. Ct. App. 2003). Even if the Court were to accept Plaintiff's statements that Mr. Dawson did make these statements to her over Praxair's hearsay objection, and that he represented himself as having the authority to bind the company with his interpretation of the arbitration provision, this provision renders Mr. Dawson incapable of binding the company. Therefore, his statements cannot form the basis of a finding that enforcement of the contract is unconscionable.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED** as to Counts I and II of Plaintiff's Complaint and **GRANTED** as to Counts III-VII. An appropriate order shall issue.